**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD HUMPHRIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 10-cv-7756 |
| | ) | |
| COPPERCREST LEVERAGED | ) | Judge Robert M. Dow, Jr. |
| MORTGAGE FUND et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion [12] to dismiss or transfer Plaintiff's claims. For the reasons below, Defendant's motion [12] is granted in part. The Clerk is directed to transfer this case to the United States District Court for the District of Arizona.

**I.    Background**

On December 7, 2010, Plaintiff Richard Humphries filed an eight count complaint against Defendants Coppercrest Leveraged Mortgage Fund, Coppercrest Management LLC, Jayne Hartley and Matthew Hartley (collectively, "Coppercrest") alleging violations of Section 11 of the 1933 Securities Act, Section 10(b) and Rule 10(b)-5 of the 1934 Securities and Exchange Act, along with several state law claims. Humphries' claims arise out of a May 1, 2006 transaction, in which he invested $50,000 into Coppercrest pursuant to a private offering memorandum. Coppercrest was formed to "make and acquire all or portions of loans secured by real estate to various persons, corporations, limited liability companies, partnerships and other entities." Plaintiff claims that he invested in Coppercrest in reliance on oral representations that: (1) Coppercrest would use the funds raised in the offering toward investments; and (2) that the

1

funds he invested were completely protected and secured by high quality mortgages that would have a least a 50% debt to equity ratio. He also alleges that Defendants failed to disclose that they directed Coppercrest to borrow additional secured funds from another lender bank and gave that bank priority over all other investors. In October 2009, Plaintiff made a written request to withdraw his investment, but Defendants (1) refused to return the funds, (2) claimed that the fund was winding down because of the declining real estate market, and (3) used all remaining money to pay off the line of credit.

## II.     Motion to Transfer

The Court begins with Defendant's motion to transfer the case to the District of Arizona. Defendant argues that Arizona is the more appropriate forum since all of the Defendants, the Plaintiff, any potential witnesses, all of the relevant evidence, and the site of all material events occurred in Arizona.

### A.     Legal Standards Governing Section 1404(a) Motions

A district court, "[f]or the convenience of parties and witnesses, in the interest of justice, * * * may transfer any civil action to any other district court where" jurisdiction and venue would have been proper at the time the suit was initiated. 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (situation at the initiation of the suit affords the critical timeframe). The moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary * * * to determin[e] where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

In evaluating motions brought pursuant to Section 1404(a), the Court considers: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four statutory factors); *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, *2-3 (N.D. Ill. Sept. 18, 2009) (same; elaborating on private- and public-interest sub-factors).[1] Although the statute itself lists only the first four factors, considering additional factors, such as location of the material events, is appropriate. The Seventh Circuit teaches that the specified statutory "factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3; see also *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (explaining that the broad discretion accorded the trial court is a product of the "in the interest of justice" language of the statute); *Am. Commercial Lines, LLC v. Northeast Maritime Institute, Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008) (observing that courts "entertain a wide variety of factors" in evaluating venue transfer motions).

The first factor, the plaintiff's choice of forum, typically is accorded significant weight. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)). The Seventh Circuit has stated, however, that the Plaintiff's choice of forum has only "minimal value where none of the conduct occurred

---

[1] Beyond the statutory factors, there appear in the case law variations among courts as to the specific factors that should be analyzed, as well as the classification of those factors. Compare, *e.g.*, *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *1 (N.D. Ill. Apr. 17, 2003), with *Graham v. United Parcel Svc.*, 519 F. Supp. 2d 801, 808-09 (N.D. Ill. 2007). Although courts vary in their precise formulations, in the end they generally consider the same factors.

3

in the forum selected by the plaintiff." *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

With regard to the second factor, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys. Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Examination of the third factor, the convenience of witnesses, emphasizes not just the raw number but also "the nature and quality of the witnesses' testimony." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). Many courts state that, all other things being equal, the convenience of non-party witnesses is accorded greater weight than the convenience of party witnesses, the latter of whom must participate (or rather, whose non-participation brings more easily administered consequences). See, *e.g.*, *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). At the same time, a movant cannot meet its burden with only vague statements about the inconvenience imposed by the litigation on non-party witnesses: "The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony." *Id.* (citing *Federated Dept. Stores, Inc. v. U.S. Bank Nat'l Assoc.,*, 2001 WL 503039, *4 (N.D. Ill. May 11, 2001)); see also *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *2 (N.D. Ill. Apr. 17, 2003) (defendant must show that the testimony of the particular witnesses is necessary to its case).

The broadly worded fourth factor, "the interest of justice," captures several considerations, including

> relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred.

*Igoe*, 220 F.2d at 303; see also *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 (discussing the "subpoena range" of the district court). Courts also consider their familiarity with the applicable law and "the desirability of resolving controversies in their locale." *Rabbit Tanaka Corp. USA v. Paradise Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009).

The fifth factor, the location of the material events giving rise to the case, becomes comparably more important when it differs from the plaintiff's choice of forum. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007).

**B.     Analysis**

As an initial matter, both parties agree that both the Northern District of Illinois and the District of Arizona are proper venues for this suit. Therefore, the Court looks to the relevant factors—(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case—to determine whether the case should be transferred.

Plaintiff's choice of forum (the first factor) weighs in favor of denying the Defendants' motion. But where, as here, the Plaintiff lives in the putative transferee district, the Court gives less deference to the Plaintiff's choice. See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum" but "a foreign plaintiff's choice deserves less deference."). In a similar vein, "where plaintiff's choice of forum is not the site of material events, plaintiff's choice of forum is entitled to less deference." *First Nat. Bank. v. El Camino Resources, Ltd.*, 447 F. Supp.2d 902, 912 (N.D. Ill. 2006). Thus, the Court considers—in tandem with choice of forum—the location of material events to determine the appropriate amount of deference to give to Plaintiff's choice. *Igoe*, 220 F.2d at 304.

Plaintiff's eight count complaint contains the following allegations. Plaintiff invested $50,000 into Coppercrest. Defendants knowingly made oral misrepresentations about the security of Plaintiff's investments. Plaintiff relied on the misrepresentations when he invested into Coppercrest. After Defendants informed their investors that the fund was winding down, Plaintiff made a written request to withdraw his investment in October 2009, which was rebuffed by Defendants. Defendants failed to previously disclose that Coppercrest had borrowed additional secured funds from a bank lender and had given that bank priority over other investors. In other words, the lender bank would be paid before allowing investors to receive their return on investment. Defendants also failed to send quarterly 10-Q reports as required by the Securities and Exchange Act. Finally, Defendants made large withdrawals from Coppercrest without issuing reports or disclosing salaries to investors.

Defendants allege that nearly all of the events listed above occurred in Arizona, not Illinois, and therefore the location of material events weighs in favor of transferring the case. The Court agrees. The only event that happened in Illinois was the signing of the investment documents. Coppercrest is headquartered in Arizona. All documents and evidence relating to the formation of the company, and the private offering and subsequent transactions and operations of Coppercrest, are located in or occurred in Arizona. All of the loans in which Coppercrest invested were secured by real estate in Arizona. Therefore, because the location of a majority of the material events occurred in Arizona, the Court gives less weight to Plaintiff's choice of forum. See *First Nat. Bank.*, 447 F. Supp. 2d at 912.

The second factor—the convenience of the parties—weighs significantly in favor of transferring the case. All of the parties live in Arizona. While, Plaintiff points out that he lives in Tucson and the Defendants are in Phoenix, the distance between divisions within the District

of Arizona is insignificant compared to the distance that all of the parties would be forced to travel to litigate in the Northern District of Illinois. Phoenix and Tucson are connected by an approximately 120-mile stretch of Interstate 10, a distance that comfortably can be transited in less than 2 hours at the posted 75 miles-per-hour speed limit. *Cf. Lowrance v. Pflueger*, 878 F.2d 1014, 1018 (7th Cir. 1989) (taking judicial notice of approximate distances between two geographic locations). By contrast, the flying time alone from either Phoenix or Tucson to either major Chicago airport is between three and four hours, depending on the wind.

Plaintiff also argues that transferring the case would be an inconvenience to both parties because they already have counsel in Illinois. But neither the statute nor the case law identifies the location of counsel as a factor for the court's consideration in determining whether a case should be transferred under § 1404. See *ATC/Vancom, Inc. v. Assurance Co. of America*, 1999 WL 753936, at *4 (N.D. Ill. Sept. 19, 1999); *Martz v. Archer-Daniels-Midland Co.*, 1995 WL 348046, at *2 n.5 (N.D. Ill. June 6, 1995) ("the location of counsel is not traditionally considered significant in a § 1404 analysis, and we shall therefore disregard it."); see also Charles Alan Wright, Arthur R. Miller, et al., 15 FED. PRAC & PROC. JURIS. § 3850 (explaining that "the great majority of the cases" have concluded that convenience and location of counsel "is not to be considered at all, that it is 'irrelevant' or 'improper' to consider, or that it is to be given very little weight by the district court" in considering whether to transfer a case).

The third factor—the convenience of witnesses—also weighs in favor of granting the motion to transfer. Plaintiff acknowledges that all of the potential witnesses are located in Arizona.

The Court next considers the fourth factor, the interests of justice. Considering factors such as (1) docket congestion and likely speed to trial in the transferor and potential transferee

forums; (2) each court's relative familiarity with the relevant law; (3) the respective desirability of resolving controversies in each locale; and (4) the relationship of each community to the controversy, *Research Automation Inc. v. Schrader-Bridgeport Intern., Inc*., 626 F.3d 973, 978 (7th Cir. 2010), the interests of justice weigh in favor of transferring the case. The first two factors are neutral; the case should proceed to trial (or other disposition) at roughly the same pace regardless of location, and both courts are familiar with the law at issue. But the last two factors weigh in favor of transfer. Arizona has more relation to this case and a stronger interest in resolving it than Illinois because the case involves Arizona citizens exclusively and the vast majority of the underlying relevant transactions occurred in Arizona. Accordingly, the fourth factor weighs in favor of transfer.

The fifth factor—the location of material events—also weighs in favor of transfer. As discussed above in detail, the overwhelming majority of Plaintiff's allegations concern activity that occurred in Arizona and all of the relevant evidence is located in Arizona.

Taking all five factors into consideration, the Court concludes that the District of Arizona is the more appropriate venue for this case: an overwhelming majority of the material events occurred in Arizona; most of the evidence will come from Arizona; all of the parties reside in Arizona; all non-party witnesses are likely to reside in Arizona; and Arizona and its citizens have a greater relation to and interest in resolving this case. Accordingly, the Court grants Defendants' motion to transfer.[2]

---

[2] Because the Court now transfers this case to the District of Arizona, the Court offers no view at this time on Defendants' alternative contention that Plaintiff's claims should be dismissed.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss or transfer [12] is granted in part, and this case is hereby transferred to the United States District Court for the District of Arizona.

Dated:  February 15, 2012          _____
                                   Robert M. Dow, Jr.
                                   United States District Judge